[No. B050663. Second Dist., Div. Four. May 29, 1991.]

GAIL ANTHONY, Plaintiff and Appellant, v.
KENNETH W. KIZER, as Director, etc., Defendant and Respondent.

COUNSEL

Joy Young Stephenson for Plaintiff and Appellant

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Charlton G. Holland, Assistant Attorney General, John H. Sanders and Bradley A. Solomon, Deputy Attorneys General, for Defendant and Respondent.

OPINION

GOERTZEN, J.—Gail Anthony appeals from the judgment entered in which the superior court denied appellant's petition for writ of mandate to compel Kenneth W. Kizer, Director of the Department of Health Services, to set aside his decision denying her Medi-Cal disability benefits. (Code Civ. Proc., § 1094.5.) Appellant contends primarily that the trial court prejudicially erred by failing to consider whether a combination of appellant's impairments equaled a listed impairment and by using an erroneous standard when it concluded appellant was not disabled.

PROCEDURAL HISTORY

Appellant applied for Medi-Cal disability benefits in November 1985, claiming she was unable to work because she suffers from systemic lupus erythematosus, pericardial effusion with chest pain and swelling in the elbow and knee. Her application was denied; and she, thereafter, requested a fair hearing. Following a hearing, the administrative law judge issued a proposed decision finding appellant disabled, granting her benefits and concluding that appellant's impairments equaled a listed impairment. Because of dissatisfaction with that decision, respondent ordered another hearing be held for further review and consideration of the issues. A second administrative law judge issued a proposed decision finding appellant not disabled and denying benefits. This second decision was adopted as the decision of respondent.

Thereafter, appellant timely filed a petition for writ of mandate in the superior court which was denied.[1]

---

[1]In its statement of decision, the court concluded: "1. It is undisputed that petitioner suffers from lupus. A diagnosis of lupus, however, does [not] automatically equate with disability. Petitioner must still prove disability for a minimum twelve month period. [¶] 2. Except for the medical diagnosis of lupus, petitioner presented little or no objective medical evidence of disability. Instead, petitioner's case is heavily dependent upon her subjective complaints and personal evaluation of her own inability to work. [¶] 3. The evidence establishes neither inability to work for the minimum twelve month period nor such frequent exacerbations to

## STANDARD OF REVIEW

■ In reviewing decisions denying applications for Medi-Cal disability benefits, the superior court is required to exercise its independent judgment on the evidence. (See *Frink* v. *Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476].) " '[A]buse of discretion is established if the court determines that the findings are not supported by the weight of the evidence.' " (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 734 [129 Cal.Rptr. 298, 548 P.2d 698].) The review of the record by this court on appeal is then limited to a determination of whether there exists any substantial evidence in support of the trial court's judgment. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) All conflicts in the evidence must be resolved and all inferences drawn in favor of the judgment. (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602]; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) "This limitation, however, does not apply to resolution of questions of law where the facts are undisputed. In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. [Citations.] Statutory construction is such a question of law for the courts and the Board's administrative interpretations of statutes must be rejected where they are contrary to statutory intent. [Citation.]" (*Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407-408 [216 Cal.Rptr. 782, 703 P.2d 122].)

Pursuant to title XIX of the Social Security Act, Congress provided a statutory program known as Medicaid " 'to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services. [Citation.] The Federal Government shares the costs of Medicaid with States that elect to participate in the program. In return, participating States are to comply with requirements imposed by the Act and by the Secretary of Health and Human Services. [Citations.]' " (*Will* v. *Kizer* (1989) 208 Cal.App.3d 709, 715 [256 Cal.Rptr. 328].)

California has established such a plan known as Medi-Cal. Title 22 of the California Code of Regulations, section 50223 provides that persons 18

meet the 'listing' requirements. The evidence proves at most that petitioner suffers from lupus and can be temporarily disabled by a lupus flare-up, but not (at least thus far) for the requisite period. As of 1987, petitioner's lupus was noted to be in remission. The doctor's evaluations, some (or even all) of which may have been based upon examinations during periods of remission, do not indicate disability. [¶] 4. The petition is denied. Respondent to prepare judgment."

years of age or over are disabled if they meet the definition of disability as defined in title II or title XVI of the Social Security Act.[2]

The Code of Federal Regulations sets out the five sequential steps followed in evaluation of a claimant's disability.[3]

STATEMENT OF FACTS

Appellant was admitted to LAC-USC Medical Center on January 24, 1984, and diagnosed with "Seronegative rheumatoid arthritis with acute

---

[2]"Disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." (42 U.S.C. § 423(d)(1)(A).)

"[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (42 U.S.C. § 423(d)(2)(A).)

"[An] impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." (20 C.F.R. § 404.1508.)

[3]20 Code of Federal Regulations section 404.1520(a) and section 416.920 describes the sequential steps used as follows:

1. Is the claimant working? If the claimant is working and the work done is substantial gainful activity, claimant will be found not disabled.

2. Does the claimant have a severe impairment? If claimant does not have any impairment or combination of impairments which significantly limits claimant's physical or mental ability to do basic work activities, claimant will be found not disabled. This determination is made without consideration of age, education and work experience.

3. Does the claimant have an impairment or impairments which meet or equal a listed impairment in Appendix 1 of the Code of Federal Regulations? If claimant has an impairment which meets the duration requirement and is a listed impairment, claimant will be found disabled without considering age, education and work experience.

4. Does the claimant have an impairment which prevents claimant from performing past relevant work? Under this step, claimant's residual functional capacity and the physical and mental demands of the past work are evaluated.

5. Does the claimant have an impairment or impairments that prevent claimant from performing other work?

20 Code of Federal Regulations, section 404, subpart P, appendix 1, sets forth listings of impairments. If a person meets or equals these listings, he or she is considered disabled in accordance with 20 Code of Federal Regulations, section 404.1520(d). The listings include 10.04: "Disseminated lupus erythematosus (established by a positive LE preparation or biopsy or positive ANA test). With frequent exacerbations demonstrating involvement of renal or cardiac or pulmonary or gastrointestinal or central nervous systems."

flare, possibly secondary to institution and then abrupt tapering of steroids."

Appellant was admitted to LAC-USC on March 22, 1984, complaining of right leg pain. Appellant's right knee was injected with steroids and showed improvement. She then developed muscle pain of unknown etiology. She was diagnosed with rheumatoid arthritis with myalgia and discharged on March 25.

A rheumatology clinic report dated May 14, 1985, diagnosed appellant as having lupus with polyarthritis.

On November 19, 1985, appellant was admitted to LAC-USC complaining of a one-month history of pleuritic and anterior chest wall pain with the feeling of shortness of breath as well as a vague complaint of dyspepsia. The pain worsened with deep inspiration. For the week prior to admission, she felt shortness of breath with dyspnea on exertion. Her discharge summary noted that she had been diagnosed in February 1983 with systemic lupus erythematosus and that her lupus is manifested by arthritis, pleuritis, anemia, positive serology, type 2B glomerulonephritis, photosensitivity and rash as well as a history of Raynaud's phenomenon. A kidney biopsy in 1983 showed an essential proliferative disease. A joint exam indicated full range of motion at all joints. However, there was mild pain at the right ankle, left knee, left wrist and the right elbow without effusions. Appellant's chest pain eventually resolved and she was no longer short of breath on discharge. Her physical exam was unchanged except that the dullness at lung bases had decreased. She was discharged on November 25, 1985.

In December 1985, appellant prepared a work history. It stated that for the past couple of years she had been working for "Homemakers" and that she was presently working for a woman 27 hours per month.

Appellant was evaluated by Abel Medical Evaluations on January 15, 1986. At the time of her examination, appellant denied joint pain but stated that she suffers from ankle swelling after prolonged standing. This condition is relieved with elevation of her legs. Appellant stated during her examination that she suffers from shortness of breath after walking half a block. Dr. S. Nafoosi reported that appellant has been diagnosed to have systemic lupus for the last two years. "She has been hospitalized multiple times for this condition. There is a history of arthralgia, bursitis and kidney involvement. The physical examination today showed no joint swellings or erythema. She did have the rash from the lupus that was present on her face. There was hypertension, but she is on no medications for this disease. She was well

developed and well nourished. There was no sign of chronic renal failure." Following a pulmonary function test, Dr. Nafoosi concluded that appellant suffered from mild restrictive lung disease.

On January 28, 1986, a residual functional capacity assessment was made on appellant which concluded that appellant's "Basic Strength Factors" were unlimited, that appellant could climb, balance, stoop, kneel, crouch and crawl frequently. Appellant's ability for reaching, handling, fingering, feeling, seeing, hearing and speaking were unlimited. An environmental restriction that she not work for prolonged periods in sunlight was noted.

Appellant was admitted to LAC-USC Medical Center on August 19, 1986, complaining of a several week history of anterior pleuritic type chest pain associated with increasing shortness of breath, increasing fatigue, and decreased ability to walk. She also complained of slightly increased swelling of her legs, arthralgias and overall systemic fatigue. A physical exam revealed mild respiratory distress with obvious splinting. It also revealed mild tenderness in both shoulders and mild left wrist swelling with restricted movement of left wrist, while other joints appeared to be uninvolved. Appellant was discharged on August 26.

Leroy Young, M.D., examined appellant on August 31, 1987, pursuant to a request by the Department of Social Services disability evaluation division. His examination revealed appellant's lungs were "[c]lear to percussion and auscultation." With regard to the heart, "[t]here is no cardiomegaly. The rhythm is regular sinus. There are no murmurs." With regard to extremities, "[t]here is no redness, tenderness, swelling or limitation of movement of the joints." Dr. Young commented: "[Systemic Lupus Erythematosus] is a chronic relapsing disease with periods of remission. Presently, the patient is in remission. There is no redness, tenderness or swelling of the joints. Ambulation is normal. There is no physical stigmata of the disease. The present remission may be secondary to the treatment or natural remission. The medical records and chemitries [sic] at the LAC/USC Medical Center should be reviewed for definitive diagnosis. The patient should be under constant medical care to prevent, if possible, complications such as nephritis, myocarditis and chronic joint disease."

On September 15, 1987, appellant received a residual functional capacity assessment. The reviewing physician found that appellant's physical capacity was limited but that she retained maximum capacities to lift and/or carry twenty pounds and frequently lift and/or carry ten pounds, stand and/or walk a total of about six hours per eight-hour day, sit a total of about six hours and unlimited capacity to push and/or pull. Other physical factors were listed as unlimited and no mental impairment or environmental restrictions were noted.

At the fair hearing on November 12, 1986, appellant testified that she was 40 years old. She said that while she had not worked the last year, she had worked from approximately 1982 to 1984 for "Homemakers Chore." Before that, she had been a cocktail waitress, the last year being 1969. She had a 10th grade education and had no vocational training. While working as a homechore helper, she did light house cleaning and took the woman for whom she worked to the doctor and store. Appellant did not do very much housecleaning because sometimes she was in worse shape than the woman for whom she worked. Sometimes her hands would be swollen and inflamed and sometimes it would take her "a couple of hours to get [herself] started." Sometimes she would go to the house and start vacuuming but be unable to finish. Appellant testified she experienced pain in her hands, her knees and ankles. She gets knots in her muscles and pain in the back of her neck. She had a rash from lupus about one month to three weeks ago. The rash appeared four or five times during the past three years. Appellant was in the hospital for a kidney biopsy in May 1984, after which she was told that her kidneys were doing pretty well. Appellant testified she developed shortness of breath the day of the hearing coming from downstairs and that sometimes she gets out of breath without even walking that far. Sometimes she can walk farther than others. Regarding lifting, appellant testified that sometimes she can lift 50 or 100 pounds but at other times she cannot. She cannot carry two bags of groceries if there is anything heavy in them, but she can carry two 5-pound bags of sugar under her arms. She cannot walk for long distances because her feet, ankles and knees swell and hurt. She always takes a cane with her. The day before the hearing, her ankle and knee were not swollen, but on the Saturday and Sunday before the hearing she was in bed all day. On the day of the hearing, appellant claimed she walked with a limp. Sometimes she can push and pull things and other times she cannot. On the day of the hearing, she had pain in her chest when she took a deep breath. She testified that during the past year she could not have held down a full- or part-time job because when she gets up in the morning she never knows how much work she can do. She might be able to work for only an hour. She can sit for two hours maximum at a time. Appellant testified she could bend, climb, balance and stoop occasionally, but she could not kneel very much, and had never tried to crawl. She could not use her hands very well.

## DISCUSSION

Appellant contends that the trial court prejudicially erred by concluding appellant was not disabled because the evidence failed to establish she was unable to work for the minimum 12-month period. Appellant contends there is no requirement that a claimant demonstrate an inability to work for a minimum of 12 months, rather it is the medical impairment which must last

for 12 continuous months. While there appears to be no California precedent on the subject and a difference of opinion under federal authority (see for example *White* v. *Finch* (D. Mass. 1970) 311 F. Supp. 307), we believe the better reasoned opinions are those that require the two components of disability to exist at the same time.

■ "To recover disability benefits under the Act an applicant must be unable to engage in any substantial gainful activity. Disability is established by showing a medically determinable mental or physical impairment which prevents engaging in any gainful activity. Inability to engage in any gainful activity and the impairment which causes it cannot be separated. The two components of disability must exist at the same time. The statute, which defines disability, not impairment, speaks only of an impairment which can be expected to result in death or to last for a continuous period of at least 12 months and one which will disable a person seeking disability benefits for a like period. For example, an applicant may have an injury from which he has lost one of his hands. The result is a physical impairment for the remainder of his life, but if he is able to engage in any gainful activities within a year from his injury he is not entitled to benefits." (*Alexander* v. *Richardson* (10th Cir. 1971) 451 F.2d 1185, 1186; see *Krumpelman* v. *Heckler* (9th Cir. 1985) 767 F.2d 586, 589.)

■ Appellant's contention that the trial court failed to determine whether a combination of impairments equaled a listed impairment is not supported by the record. The issue of equivalency was the subject of a lengthy discussion in the trial court where appellant's counsel argued that if the court finds that appellant's impairment is not a listed impairment it must also consider "whether or not a combination of [her] impairments equals a listed impairment." The court's statement of decision did not indicate that it failed to consider whether appellant's impairments equaled a listed condition but rather it indicated that the objective evidence was insufficient to demonstrate any impairment other than lupus. That conclusion is supported by substantial evidence.

Equally meritless is appellant's contention that the court failed to consider whether appellant was disabled prior to 1987. The statement of decision does not indicate that the court only considered disability from 1987. The reference to the year 1987 was as an example of appellant's inability to prove impairment for the required 12 continuous months.

Appellant's contention that the trial court failed to consider her subjective complaints of pain is also not supported by the record. The statement of decision indicated that appellant's case was heavily dependent upon her subjective complaints of pain, which were considered by the court but were

insufficient to alone prove disability. (See *Sorenson* v. *Weinberger* (9th Cir. 1975) 514 F.2d 1112, 1118.)

## DISPOSITION

The judgment is affirmed.

George, Acting P. J., and Epstein, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 1991.