[No. A052355. First Dist., Div. Two. Mar. 2, 1992.]

WINFRED H. DANIELS, Plaintiff and Appellant, v.
LINDA S. McMAHON, as Director, etc., et al., Defendants and
Respondents.

## Counsel

Edward Barnes for Plaintiff and Appellant.

Katherine E. Meiss and Richard A. Rothschild as Amici Curiae on behalf of Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendants and Respondents.

## Opinion

**KLINE, P. J.**—This appeal challenges a policy utilized by the Alameda County Department of Social Services in determining eligibility for benefits under a state funded program providing supplemental benefits in certain circumstances to recipients of the federal-state Aid to Families with Dependent Children program. Winfred Daniels appeals the superior court decision dismissing the action by which he sought to invalidate the policy.

### Statement of the Case and Facts

The Aid to Families with Dependent Children (AFDC) program is a federal-state program which provides cash grants to needy children and their families. (42 U.S.C. § 601 et seq.) The costs of the program are divided between the federal government and state. (42 U.S.C. § 603.) To be eligible for federal funding, states must formulate plans which fulfill the requirements of section 602(a) of title 42 of the United States Code. (*Darces v. Woods* (1984) 35 Cal.3d 871, 880 [201 Cal.Rptr. 807 [679 P.2d 458].)

Although states' participation in the AFDC program is voluntary, once a state elects to participate, it must maintain a welfare system which complies with the mandates of federal law. (*Id.*, at p. 880; *Edwards* v. *McMahon* (9th Cir. 1987) 834 F.2d 796, 798; *Vaessen* v. *Woods* (1984) 35 Cal.3d 749, 754 [200 Cal.Rptr. 893, 677 P.2d 1183], cert. den. 470 U.S. 1049 [84 L.Ed.2d 811, 105 S.Ct. 1746]; 42 U.S.C. §§ 601, 604(a)(2).) Monthly AFDC grants to families are based on a state determination of the amount necessary to "maintain a hypothetical family at a subsistence level" (*Shea* v. *Vialpando* (1974) 416 U.S. 251, 253 [40 L.Ed.2d 120, 125, 94 S.Ct. 1746]); states are not required to provide any specified level of income. (*Rosado* v. *Wyman* (1970) 397 U.S. 397, 408 U.S. 397 [25 L.Ed.2d 442, 453, 90 S.Ct. 1207]; *Darces* v. *Woods, supra,* 35 Cal.3d at p. 881, fn. 8; *Vaessen* v. *Woods, supra,* 35 Cal.3d at p. 755.)

In California, the amount of cash to which a family is entitled each month, the "maximum aid payment" or MAP, is specified in Welfare and Institutions Code section 11450.[1] The amount of aid a family receives from the AFDC program is determined by subtracting the family's income from the MAP. (§ 11450.) For example, if a family of five is entitled to a MAP of $899 and has no income, it receives the full $899 from AFDC. If the family has income of $300 from another source, it receives $599 from AFDC.

Federal law requires states to determine the amount of aid to which a family is entitled in a given month by reference to a prior month's income. (42 U.S.C. § 602(a)(13); 45 C.F.R. § 233.35.) In California, the month upon which the determination is based, the "budget month," is two months prior to the month in which benefits are paid, the "payment month." (*Vaessen* v. *Woods, supra,* 35 Cal.3d at p. 755; Dept. of Social Services Manual of Policy and Procedures (MPP) § 44-313.2) Thus, if a family receives income other than AFDC in January, its AFDC grant for March will be reduced by the amount its income in January exceeded the MAP.

Before an AFDC grant can be reduced or terminated, the family must be given advance notice of the proposed action and a right to request a hearing before the reduction or termination takes place. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]; 45 C.F.R. § 205.10.) If the family requests a hearing, aid continues uninterrupted until after the hearing is held. (MPP § 22-022.5.) This aid during the hearing process is referred to as "aid paid pending." If it is determined that the reduction or termination of benefits is correct, the aid paid pending results in an overpayment. (MPP § 44-350.4.) Federal law mandates that states correct overpayments and underpayments under the state plan (42 U.S.C. § 602(a)(22).) The

---

[1] All statutory references will be to the Welfare and Institutions Code unless otherwise specified.

federal regulations implementing this rule require specification of statewide policies for recovery of overpayments of AFDC, including "overpayments resulting from assistance paid pending hearing decisions." (45 C.F.R. § 233.20(a)(13).) When overpayments are recovered by reducing future grants, however, the reduction cannot leave the family less than 90 percent of the MAP in any month. (42 U.S.C. § 602(a)(22).)

California provides a program under which AFDC families are entitled to receive supplemental payments "when, because of a change in reported financial circumstances occurring between the 'budget month' and the 'payment month,' a family's net available income for the payment month is less than 80 percent of the amount set forth in subdivisions (a) and (b) of Section 11450 [MAP] . . . ." (§ 11450.2, subd. (a).) The amount of the supplemental payment is that necessary to raise the family's net available income in the payment month to 80 percent of the MAP and may not be considered income when calculating the amount of future grants. (§ 11450.2, subds. (a)(2), (a)(3).) Requests for supplemental payments must be made in the month for which the payment is requested and the Department must act on the request within seven working days. (§ 11450.2, subd. (a)(4).)

Federal law allows state supplemental payment programs such as California's but there is no federal financial participation in them. (42 U.S.C. § 603(a) [last ¶].) A supplemental payment is not treated as income for AFDC purposes as long as the supplemental payment, AFDC grant and other income for the payment month does not exceed the MAP. (45 C.F.R. § 233.20(a)(4)(iv).) No supplemental payment may be made to a family if the payment would be counted as income under the federal AFDC program. (§ 11450.2, subd. (a)(5).)

In the present case, appellant, his wife and three minor children had been receiving the full MAP of $899 each month. In May 1989, the family received disability benefits totalling $951.43. In June, appellant was notified that the family's grant for July would be reduced to zero because of the $951.43 payment in May. On June 23, appellant requested a hearing and consequently received $899 aid pending for the month of July. According to appellant's testimony before an administrative law judge, he asked for aid pending rather than requesting a supplemental payment because his family would have been "out on the streets" if he had not received the July check on the first of the month. On July 5, appellant requested a supplemental payment for July. This request was denied because appellant had received aid paid pending in the full amount of the MAP. Appellant appealed this decision. On August 4, appellant was notified that the $899 he received in July was an overpayment.

At a hearing on August 29, appellant conceded the proper AFDC grant for July should have been zero, due to the income in May. He argued, however, that the amount of the overpayment (the $899 aid paid pending) should have been reduced by the amount of the supplemental payment to which he would have been entitled if he had not requested a hearing and received aid paid pending. The administrative law judge agreed. This decision was reversed by the director. On December 5, appellant filed a complaint for injunctive and declaratory relief and a petition for writ of mandate challenging the director's action. The petition was denied on April 16, 1990, and respondents' motion for judgment on the pleadings as to the other causes of action was granted on September 28. Judgment denying relief and dismissing the action was entered on November 7. A timely notice of appeal was filed on January 4, 1990.

## Discussion

Appellant contends the department's policy of counting aid paid pending which turns out to be an overpayment in determining eligibility for supplemental payments under section 11450.2 violates the statute as well as constitutional guarantees of due process and equal protection. Appellant does not contend he should have received *both* the aid paid pending and a supplemental payment under section 11450.2, but contends that once it was determined his aid paid pending was an overpayment, he should have had to repay only the difference between the supplemental payment he would have received if he had not requested a hearing and the full payment he in fact received as aid paid pending.

## I.

Appellant's initial contention is that aid paid pending is not one of the types of income section 11450.2 specifies for consideration in determining eligibility for supplemental payments. Under section 11450.2, a family is eligible for a supplemental payment if its "net available income" for the payment month is less than 80 percent of its MAP. (§ 11450.2, subd. (a).) "Net available income" is defined as the sum of (1) "[t]otal net nonexempt income in the payment month," (2) "[a]ny child or spousal support received by the family," and (3) "[t]he grant for the payment month before overpayment adjustments." (§ 11450.2, subd. (b)(2).)

Respondent maintains that aid paid pending is a "grant for the payment month" within the meaning of the statute. According to respondent, since the very concept of *Goldberg v. Kelly, supra*, 397 U.S. 254, is that an AFDC grant may not be terminated while a fair hearing is pending, the aid paid

pending the hearing is necessarily an AFDC grant. The fact aid paid pending may have to be repaid (if determined to be an overpayment), according to respondent, does not distinguish it from other AFDC payments, which are also subject to recoupment if determined to be overpayments.[2]

As appellant points out, however, "grant" is statutorily defined as "the amount of aid paid to the needy family pursuant to subdivision (a) of Section 11450." (§ 11450.2, subd. (b)(4).) Section 11450 provides for the ordinary monthly AFDC payment calculated by subtracting the family's income from the MAP; as required by federal law, the amount of this payment is determined by retrospective budgeting. (MPP § 44-313.2; 42 U.S.C. § 602(a)(13).) In appellant's case, the "grant" for July was zero, since the family's income of $951 (the May disability payment) exceeded its MAP of $899. Aid paid pending thus is not a "grant" within the statutory definition.

Although not directly addressed in the brief, respondents also apparently view aid paid pending as within the section 11450.2, subdivision (b)(2), definition of "net available income" as "available income," presumably part of the category "net nonexempt income." (§ 11450.2, subd. (b)(2)(A).) This characterization appears legitimate on the face of the statute: Where, as in appellant's case, a family receives the full MAP amount in the payment

---

[2]Appellant characterizes aid paid pending as a "temporary," "provisional, uncertain and recoverable maintenance amount" received by the family awaiting a hearing and claims it cannot be considered a "grant" because, by virtue of the fact it must be repaid if determined to be an overpayment, it is loaned rather than given to the family. He relies upon *Burch* v. *Prod* (1979) 90 Cal.App.3d 987, 992 [153 Cal.Rptr. 751], which held that "loans made to a wrongfully denied applicant who use[d] the proceeds of the loans for current expenses are not to be considered as 'income' for the purpose of reducing the amount of the AFDC grant." (*Id.*, at p. 992.) Appellant does not come within *Burch*'s literal holding, as he concedes he was not "wrongfully denied" the AFDC grant for July but properly reduced to zero because of his income in May. Moreover, aid paid pending cannot be considered a "loan" in all circumstances, since it only has to be repaid to the extent it is determined to have been an overpayment. If a family wins an appeal of a termination or reduction, it keeps the aid paid pending. To characterize the aid paid pending as a loan which cannot be considered in determining eligibility for a supplemental payment is to prejudge whether or not the recipient's appeal will be successful.

Appellant further suggests the "grant for the payment month" meant by the Legislature to be used in determining eligibility for supplemental payments must refer to the "correct" grant and not a payment subsequently determined to be a recoverable overpayment. As noted above, however, the fact aid paid pending may have to be repaid does not distinguish it from other AFDC payments, since aid paid pending a successful appeal is kept by the family and regular monthly AFDC payments are subject to recoupment if subsequently determined to be overpayments.

month, its available income exceeds that triggering eligibility for a supple-mental payment.[3] Appellant complains that although the aid paid pending was "currently available" in July, it was not money the family could keep because it was an overpayment. In essence, he contends an AFDC recipient should be eligible for a supplemental payment not only when the family literally does not have at least 80 percent of the MAP "currently available" in the payment month but also when it is determined that the income available in the payment month as aid paid pending must be repaid as an overpayment after an unsuccessful appeal. ██ Nothing in section 11450.2 compels appellant's view; rather, the statute appears to contemplate a relatively contemporaneous request for supplemental payment and pay-ment during the payment month.[4]

 Appellant's contention that the department's policy violates the purpose of section 11450.2 to prevent needy families from having to live on less than 80 percent of their usual monthly grant does not withstand scrutiny. The Legislature stated the purpose of this statute as follows: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In the absence of a system for supplemental payments, some needy families are required to live for one to two months on amounts less than the Minimum Basic Standard of Adequate Care because of the budgeting system, and are thereby subject to severe deprivation. It is therefore necessary that this act, which corrects that situation, take effect immediately." (Stats. 1986, ch. 1075, § 6, p. 3760.)

---

[3]The director found appellant was not entitled to a supplemental payment by viewing the aid paid pending" as income "currently available" (i.e., in July) to the family within the meaning of the MPP section 44-101: "Income, generally, is any benefit in cash or in kind which is in fact currently available to the individual . . . . " Under the department's regulations, the "net available income" which determines eligibility for a supplemental payment consists of the retrospectively budgeted grant amount and the current month's estimated other available income. (MPP §§ 44-401, 44-402.) The director noted it was undisputed that appellant's retrospectively budgeted grant amount for July was zero but determined the department correctly characterized the aid paid pending as "other available income."

[4]The statute by its terms requires only that "supplemental payments or written notice of action" be issued within seven working days of a request for a supplemental payment. (§ 11450.2, subd. (a)(4).) Accordingly, appellant urges the department could have complied with the statute by notifying him that in the event the aid paid pending was determined to be an overpayment 80 percent of the money he received as aid paid pending would be considered a supplemental payment so that he would have to repay only the 20 percent of MAP he was not entitled to receive. It is not the function of this court to pass on whether appellant's proposed method of implementing the statute would be preferable but only to determine whether the department's policy violated the governing statute and, if it did not, whether it is constitutional.

The family that receives aid paid pending an unsuccessful appeal receives its full MAP amount in the payment month. While it has to repay the aid paid pending, it cannot be required to do so at a rate that leaves the family less than 90 percent of MAP in a given month. (42 U.S.C. § 602(a)(22).) The purpose of section 11450.2 is not violated by denying such a family a supplemental payment because the family is never forced to live on less than 80 percent of MAP.[5]

Having determined that the department's policy does not violate section 11450.2, we need not address respondents' various arguments that the offset procedure appellant urges the department should follow would violate the state and federal statutes and would be impossible to implement.

## II.

Appellant contends the department's policy violates the due process and equal protection guarantees of the federal and state Constitutions. He argues that the constitutional right to a hearing before AFDC benefits are terminated (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 264 [25 L.Ed.2d at p. 297]) is impermissibly burdened when a family which would have been entitled to a supplemental payment if it did not request a hearing is denied the supplemental payment because it requested the hearing. Framed as an equal protection claim, the argument is that the department's policy impermissibly treats differently families otherwise similarly situated solely on the basis of one family's exercise of a constitutional right.

Recognizing that the state is not obligated to provide supplemental payments, appellant relies upon the principle that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons . . . [*i*]*t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . .*" (*Rutan* v. *Republican Party of Illinois* (1990) 497 U.S. 62, [111 L.Ed.2d 52, 65, 110 S.Ct. 2729, 2736], quoting *Perry* v. *Sindermann* (1972) 408 U.S. 593, 597 [33 L.Ed.2d 570, 577, 92 S.Ct. 2694], italics in original [infringement of 1st Amend. rights].) Appellant relies upon cases invalidating legislation which burdened fundamental constitutional rights by withholding economic benefits because the right was exercised. For example, in *Shapiro* v. *Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct.

[5]The family that pursues an unsuccessful appeal does receive less income overall than a family that does not request a hearing. The former family receives 100 percent of MAP as aid paid pending the hearing, then has to repay that full amount over a number of months while living on 90 percent of MAP. The latter family receives only 80 percent of MAP for the payment month in question but then (assuming no additional income to reduce subsequent monthly grant amounts) reverts to its normal monthly payment.

1322], the Supreme Court invalidated a statute imposing a residency require-ment for eligibility for welfare benefits. The classification established by the statute, which distinguished between equally needy residents, disallowing benefits to residents who would otherwise be eligible solely because they had not lived in the state for a year, impermissibly burdened the fundamental constitutional right to travel. (*Id.*, at p. 627 [22 L.Ed.2d at p. 611].) The court similarly found invalid a statute imposing a residency requirement for eligibility for nonemergency care at county hospitals. (*Memorial Hospital* v. *Maricopa County* (1974) 415 U.S. 250 [39 L.Ed.2d 306, 94 S.Ct. 1076].) Appellant also cites California cases establishing a stringent test for the constitutionality of laws infringing fundamental constitutional rights. (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 213 [211 Cal.Rptr. 398, 695 P.2d 695]; *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118]; *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409].[6]

By the authority cited, appellant appears to assume the right at issue is a fundamental one deserving the strictest scrutiny. As appellant provided no authority for this assumption, this court requested additional briefing on the question whether the right identified in *Goldberg* v. *Kelly, supra,* is a fundamental right for purposes of constitutional analysis in this case. *Goldberg* v. *Kelly, supra,* 397 U.S. 254 held that due process requires AFDC recipients be given a pretermination hearing and continuation of aid pending that hearing. Appellant urges that a violation of due process is a violation of a "fundamental right," relying on *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 914-919 [132 Cal.Rptr. 405, 553 P.2d 565].

*Payne* v. *Superior Court, supra,* held that denying an indigent prisoner the right to personally appear to defend a civil suit violated a fundamental due process right of access to the courts. (17 Cal.3d at pp. 913-919.) In deter-mining the right at issue was subject to strict scrutiny, the court considered the significance of the underlying interest sought to be protected and the

---

[6]Under these cases, "[w]hen receipt of a public benefit is conditioned upon the waiver of a constitutional right, the 'government bears a heavy burden of demonstrating the practical necessity for the limitation.' (*Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 505 . . . .) The governmental entity seeking to impose such a condition must establish that: (1) the condition reasonably relates to the purposes of the legislation which confers the benefit; (2) the value accruing to the public from imposition of the condition manifestly outweighs any resulting impairment of the constitutional right; and (3) there are no available alternative means that could maintain the integrity of the benefits program without severely restricting a constitutional right. [Citations.]" (*Robbins* v. *Superior Court, supra,* 38 Cal.3d at p. 213; see *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at pp. 265-266; *Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d at pp. 501-502, 505-507.)

availability of other means to pursue that interest. (*Id.*, at pp. 915-919.) The court reviewed several decisions of the United States Supreme Court: *Boddie* v. *Connecticut* (1971) 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780], in which it was held unconstitutional to require indigents to pay a filing fee to dissolve a marriage; *United States* v. *Kras* (1973) 409 U.S. 434 [34 L.Ed.2d 626, 93 S.Ct. 631], which found no constitutional infirmity in requiring an indigent debtor to pay a filing fee to obtain a discharge in bankruptcy; and *Ortwein* v. *Schwab* (1973) 410 U.S. 656 [35 L.Ed.2d 572, 93 S.Ct. 1172], which upheld the validity of a filing fee for appellate review of an agency determination resulting in lower welfare payments. The latter two cases did not find constitutional violations in part because the interests at stake— bankruptcy and welfare—were constitutionally less significant than dissolution of the fundamentally important marriage relationship. The *Payne* court viewed the interest in protecting one's property in court as equal in constitutional significance with the right to dissolve a marriage protected in *Boddie.*

■ *Payne* thus indicates that the level of scrutiny afforded to, and assessment of the constitutionality of, limitations on a constitutional right depends on the nature of the interest at issue. (See *Ortwein* v. *Schwab, supra,* 410 U.S. at pp. 658-659 [35 L.Ed.2d at pp. 575-576].) As appellant recognizes, the right to receive welfare is not a fundamental right (*Medora* v. *Colautti* (3d Cir. 1979) 602 F.2d 1149, 1154) and social welfare legislation is ordinarily subjected to rational basis review. (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 484-485 [25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153]; *King* v. *McMahon* (1986) 186 Cal.App.3d 648, 661 [230 Cal.Rptr. 911].) The decision in *Goldberg* v. *Kelly, supra,* 397 U.S. 254, was based on the degree of deprivation suffered by recipients improperly cut off from aid. "Thus the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." (*Id.*, at p. 264 [25 L.Ed.2d at p. 297], fn. omitted, italics in original.)

■ The right secured by *Goldberg* was not infringed by the department's policy challenged in the present case. The recipient who appeals a reduction in benefits receives a pretermination hearing and aid paid pending; even if this aid paid pending is later recouped as an overpayment, such

recoupment cannot leave the recipient with less than 90 percent of the MAP in a given month. (42 U.S.C. § 602(a)(22).) We recognize that the department's policy chills exercise of the right to appeal a reduction or termination of benefits because the overall amount of aid received will be less than that received by a recipient who does not appeal (see fn. 5, *supra*). What is at stake, however, is not a complete or near complete deprivation of means of subsistence. Accordingly, at least in the circumstances of this case, we find no infringement of a fundamental right.[7]

Moreover, even if the right at issue were properly characterized as "fundamental," " 'not every limitation or incidental burden on a fundamental right is subject to the strict scrutiny standard. ■ When the regulation merely has an incidental effect on exercise of protected rights, strict scrutiny is not applied. (E.g., *Zablocki* v. *Redhail* (1978) 434 U.S. 374 . . . [regulations affecting the right to marry]; *Califano* v. *Jobst* (1977) 434 U.S. 47 . . . [same]; *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 303-305 [138 Cal.Rptr. 53, 562 P.2d 1302] . . . [reasonable limitations on placement of newspaper racks]; *Gould* v. *Grubb* (1975) 14 Cal.3d 661, 670 . . . [rational basis standard applicable to numerous statutes detailing the mechanisms of the right to vote].) It is only when there exists a real and appreciable impact on, or a significant interference with the exercise of the fundamental right that the strict scrutiny doctrine will be applied. [Citations.]' " (*King* v. *McMahon, supra*, 186 Cal.App.3d at p. 662, quoting *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 47 [157 Cal.Rptr. 855, 599 P.2d 46].)

■ The department's policy does not directly interfere with the exercise of the right to request a pretermination hearing; all recipients facing termination are free to request a hearing and receive aid paid pending. No principle of due process is offended by the fact that if the recipient's appeal is unsuccessful the aid paid pending will have to be repaid. By section 11450.2, California has chosen to provide a benefit not required under the federal AFDC program in order to ensure that AFDC recipients do not have to live on less than 80 percent of the MAP in a given month. The department's policy effectuates the purpose of this statute; families receiving aid paid pending do not fall within the purview of the statute because their available income in the payment month exceeds 80 percent of the MAP notwithstanding the fact that they will have to repay the aid paid pending if

---

[7]In view of this conclusion, we need not consider whether the department's policy would withstand scrutiny under California's test for the constitutionality of conditions imposed upon fundamental rights set out in footnote 6, *ante*. (See *Robbins* v. *Superior Court, supra*, 38 Cal.3d at p. 213; *Committee to Defend Reproductive Rights* v. *Myers, supra*, 29 Cal.3d at pp. 265-266; *Bagley* v. *Washington Township Hospital Dist., supra*, 65 Cal.2d at pp. 501-502, 505-507.)

they lose their appeals.[8] While appellant characterizes the department's policy as unfairly penalizing the recipient who chooses to appeal a reduction or termination of benefits, such a recipient is simply not in need of the benefit the statute provides.

Section 11450.2, as interpreted by the department, creates a dilemma for the family that must decide whether to appeal and obtain aid paid pending which will have to be repaid if the appeal is unsuccessful or forgo the appeal and receive the 80 percent supplement.[9] The department's policy, however, is not aimed at discouraging recipients from requesting hearings but simply at implementing the purpose of section 11450.2 to ensure that families are not forced to live on less than 80 percent of the MAP. Appellant was afforded the due process required under *Goldberg* by receiving aid paid pending the hearing he requested. The "burden" imposed on his right to request the hearing by the department's policy was unintended, indirect and incidental to a classification not aimed at deterring exercise of the constitutional right. (See *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 423 [205 Cal.Rptr. 576].)

As we find no reason to employ strict scrutiny, we review appellant's equal protection challenge under the rational basis test. (*King* v. *McMahon*, *supra*, 186 Cal.App.3d at p. 662.) " 'The California Supreme Court has expressed the rational basis test in various ways. "Some decisions require that the classification ' "bear some rational relationship to a conceivable legitimate state purpose" ' (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 . . .); others, that the classification must rest upon 'some ground of difference having a fair and substantial relation to the object of the legislation' (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 . . . ; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 . . .)." (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 . . . . [Fn. omitted.]) In *Newland* v. *Board of Governors*, *supra*, the court recognized the differences in terminology without choosing between them, holding that whichever "linguistic formulation" is employed, the court must conduct " 'a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals' [citation] . . . ." (*Newland* v. *Board of Governors*, *supra*, 19 Cal.3d 705, 711; see *Cooper* v. *Bray* (1978) 21 Cal.3d 841, 848 . . . .)' " (*King* v. *McMahon*, *supra*, 186 Cal.App.3d at p. 663, quoting *Rittenband* v. *Cory*, *supra*, 159 Cal.App.3d 410, 424-425.)

[8]A family in the position of appellant's receives 100 percent pending the hearing and 90 percent thereafter until the month's overpayment is recouped.

[9]The appealing recipient is better off in the short term (receiving 100 percent of MAP instead of 80 percent) but worse off in the long run (having to repay the aid paid pending and therefore receiving only 90 percent of the MAP for 10 months).

In the present case, there is an obvious correspondence between the classification (families with incomes of more than 80 percent of MAP versus families with less than 80 percent of MAP) and the goal of the statute (providing AFDC recipients with at least 80 percent of MAP). As has been stated, one consequence of the classification is that a family which had income of more than 80 percent of MAP but must subsequently repay the aid paid pending ends up with less money overall than a family that did not appeal a termination decision and did receive a supplemental payment. The department's policy is not unconstitutional, however, as long as there is a rational reason for the difference in treatment. The Legislature, in section 11450.2, created a mechanism whereby families without the specified income level in a given month can relatively quickly obtain supplemental payments to carry them through the month. This system is rationally calculated to achieve its goal of assisting families most in need of immediate cash. ▆▆▆ ▬ ▬ To fully equalize payments among families over the long term by means of the offsets appellant suggests would impose significant burdens upon the state, including the need to monitor supplemental payment requests long past the payment month pending the outcome of AFDC appeals and the need to establish a system to accommodate the accounting issues raised by the fact that supplemental payments are made from exclusively state funds while AFDC payments are made from federal-state funds.[10]

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

---

[10]In response to respondents' argument that there is no authority for requiring an exclusively state-financed benefit to be offset against AFDC overpayments, which consist of federal and state funds, appellant suggests that not only authority but a duty to do so may be found in 42 United States Code section 602(a)(22). This statute imposes a duty upon the states to "take all necessary steps to correct any overpayment or underpayment of aid under the State plan." (42 U.S.C. § 602(a)(22).) As described in *Edwards* v. *McMahon, supra,* 834 F.2d 796, 799, "Section 602(a)(22) requires state agencies to 'promptly take all necessary steps to correct any overpayment or underpayment of aid' . . . 'All' means every. 'Any' means without restriction or limitation. The plain meaning of the statute could not be broader. Congress intended all underpayments to be corrected [italics omitted]." (See *Tambe* v. *Bowen* (2d Cir. 1988) 839 F.2d 108.)

Appellant's position assumes the statutory direction in 42 United States Code section 602(a)(22), applies to correction of under and overpayments of exclusively state aid as well as to AFDC payments funded in part by the federal government. There is no basis for this assumption. States are free to provide AFDC assistance from their own funds where federal benefits are unavailable (*Reyna* v. *McMahon* (1986) 180 Cal.App.3d 220 [225 Cal.Rptr. 405]), but there is no indication in 42 United States Code section 602(a)(22) that Congress intended to direct the states how to manage their allocation of such exclusively state benefits.