[No. B076133. Second Dist., Div. Six. June 10, 1994.]

MARIE BERLIN, Plaintiff and Appellant, v.
LINDA McMAHON et al., Defendants and Respondents.

68

**COUNSEL**

Channel Counties Legal Services Association, Robert K. Miller, M. Carmen Ramirez, Grant R. Specht, Barbara Jacri-Ortiz and Andrew Koenig for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton G. Holland, Assistant Attorney General, John H. Sanders and Robin T. Gertler, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

YEGAN, J.—Marie Berlin appeals after the superior court denied her mandamus petition to set aside a Department of Social Services (DSS) administrative decision reducing her grant for Aid to Families with Dependent Children (AFDC). (Code Civ. Proc., § 1094.5; Welf. & Inst. Code, § 10963.)[1] Appellant receives AFDC benefits and operates a custom T-shirt business out of her home. The amount of the AFDC grant is based on appellant's net business income.

DSS reduced appellant's AFDC grant from $1,057 to $731 for the month of June 1990 because appellant received income from her business. The trial

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise stated.

court, in denying the petition for writ of mandate, ruled that appellant could not use an accrual accounting system to defer reportable business income and expenses. We affirm.

The instant appeal arises out of two administrative hearings concerning appellant's June 1990 AFDC grant. In May 1990, the Ventura County Welfare Department (County) proposed to reduce the grant from $1,057 to $731. (§ 11004, subd. (e).) Appellant brought an administrative appeal, claiming that the county had miscalculated her net business income and AFDC grant. (§ 10950.) The administrative law judge (ALJ), in a written decision, determined that the County had correctly computed the amount of the grant based on appellant's net business income. On August 20, 1990, DSS adopted the decision. (§ 10959.) Appellant brought a petition for writ of mandate. (§ 10962.) The superior court remanded the matter with directions to take additional evidence and make further findings. (Berlin v. McMahon, (Super. Ct. Ventura County, No. 112484.))

At the second administrative hearing, evidence was presented that appellant and her family had received AFDC benefits for 10 years. In 1989 appellant asked a county welfare worker whether she could start a business. Appellant was told that an AFDC recipient can be self-employed but must report business income and expenses on a monthly basis. The case worker gave appellant a work sheet listing what business expenses could be deducted from gross income.

Appellant and her husband started the business in April 1989. Business receipts and expenses were reported on a cash basis. In April 1990 husband devised an accrual accounting system to carry forward business expenses and carry back business income. Appellant claimed no business income for the months of March, April and May 1990 based on the following accrual adjustments: (1) a customer paid $202.75 in April but the payment was listed as March income because the payment was due in March, (2) a $200 bill for shirt labels was listed as an April business expense but paid in May, and (3) $107 was deducted from gross receipts in April because appellant overcharged a customer and credited the customer's account in May.

Appellant and her husband testified that they had no prior bookkeeping experience. Husband stated that he made the accrual type entries to "build up a bank account" and save money for business equipment. A case worker told him that he could have $1,000 in savings and still be eligible for AFDC benefits.

Appellant also called a bookkeeper, Glenn Hevenstrike, to testify.[2] Hevenstrike stated that the bookkeeping entries for March, April and May was "a combination of cash and accrual. . . . [I]t's basically cash with some adjustments made. This adjustment for $202.75 is an accrual adjustment . . . , but basically everything gets reported when they pay for it, which is characteristics [sic] of a cash basis accounting system."

Evidence was presented that the County received appellant's monthly eligibility report (form CA 7) on May 11, 1990. Appellant's gross earnings ($2,827.21) exceeded business expenses ($2,217.55). Applying the standard work expense deductions, the County determined that appellant received $326.44 income during the month of April. Appellant's AFDC grant was reduced from $1,057 to $731 for the month of June 1990.

The ALJ found that the County had no duty to advise appellant how to structure her business accounting system. "The AFDC Program does not dictate the type of accounting system a business is to use. It simply looks to the income and expenses that actually occur in the budget month, irrespective of the business' choice of accounting systems." The ALJ determined that the County's grant computations were correct. In doing so, the ALJ rejected appellant's argument that the County was equitably estopped from reducing the amount of the grantor collecting the $326 overpayment.

DSS adopted the decision on June 11, 1992. Appellant was ordered to reimburse the County $326 for excess AFDC benefits paid pending the administrative appeal.

Appellant filed a petition for writ of mandate challenging the second decision. The trial court independently reviewed the evidence and determined that appellant used a cash accounting system to run the business. It ruled that the AFDC regulations were based upon a cash accounting system and that appellant could not use accrual-type adjustments to change her reportable income. It also rejected the argument that the County had a duty to teach appellant proper accounting procedures before it reduced the AFDC grant. The trial court concluded that "[i]t's not an estoppel case, because there is nothing they actually relied on. No statements made or documents that would indicate that you had to have a cash system, so—or could use an accrual system. So they didn't really rely on anything to turn it into an estoppel case."

---

[2]Hevenstrike explained that "[a]n accrual system recognizes the income and expense in the month that they occur. . . . [I]f an expense has occurred in April, it's reported in April as an expense even though it may be paid in May, June or July . . . . [¶] Cash basis is when you receive money that's when you report a sell [sic], when you spent [sic] money that's when you reported [sic] expense. It doesn't matter when you received [sic] merchandise or when you ship merchandise, it's when the cash changes hands."

■ In reviewing the DSS decision the trial court reweighed the evidence, exercised its independent judgment, and made its own findings of fact. (*Frink* v. *Prod* (1982) 31 Cal.3d 166, 173-174 [181 Cal.Rptr. 893, 643 P.2d 476].) Appellate review of the trial court's factual findings is governed by the substantial evidence test, but issues of law and statutory construction are reviewed de novo. (*Ruth* v. *Kizer* (1992) 8 Cal.App.4th 380, 385 [10 Cal.Rptr.2d 274].) "All conflicts in the evidence must be resolved and all inferences drawn in favor of the judgment. [Citations.]" (*Anthony* v. *Kizer* (1991) 230 Cal.App.3d 990, 993 [281 Cal.Rptr. 516].)

The AFDC program is a federal-state cooperative program to provide assistance ". . . to needy dependent children and the parents or relatives with whom they are living. . . ." (42 U.S.C. § 601; *King* v. *Smith* (1968) 392 U.S. 309, 316 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128].) States participating in the program must meet federal statutory and regulatory requirements and use a "retrospective budgeting" system to calculate the amount of the recipient's grant. (42 U.S.C. § 602(a)(13)(A); 45 C.F.R. § 233.25; *Daniels* v. *McMahon* (1992) 4 Cal.App.4th 48, 52 [5 Cal.Rptr.2d 404].) The amount of aid payable for a particular month (the payment month) is based on the recipient's income in the prior "budget month." (45 C.F.R. § 233.25; Dept. of Social Services Manual of Policies and Procedures, Eligibility and Assistance Standards (MPP), §§ 44-313.2, 44-315.34.)[3]

In California, the budget month is two months before the payment month. (MPP, § 44-313.2.) "Thus, if a family receives income other than AFDC in January, its AFDC grant for March will be reduced by the amount [of] its income in January . . . . [¶] ■ Before an AFDC grant can be reduced or terminated, the family must be given advance notice of the proposed action and a right to request a hearing before the reduction or termination takes place. [Citations.] If the family requests a hearing, aid continues uninterrupted until after the hearing is held. [Citation.]" (*Daniels* v. *McMahon, supra,* 4 Cal.App.4th 48, 52.)

■ Appellant contends that the trial court erred when it found that accrual accounting methods may not be used to calculate business income. We disagree. DSS regulations define income as "any benefit in cash or in kind which is in fact currently available to the individual or is received by him as a result of [current] or past labor or services, business activities . . . ." (MPP § 44-101.) The regulations provide that business income ". . . shall be considered currently available during the month received . . . ." (MPP, § 44-102.)

---

[3]The state regulations governing AFDC eligibility are set forth in the MPP. (See §§ 10060, 10554.)

Appellant asserts that a grant recipient may set aside business income without reducing his or her AFDC grant if the income is earmarked for future business expenses. Not so. Federal and state regulations require that all resources currently available to the recipient be considered in calculating the amount of the grant. (45 C.F.R. § 233.20(a)(3)(ii)(D); MPP, § 44-101.) The trial court properly concluded that appellant could not use an accrual accounting system to carry back or carry forward business income. Business income received in the month of April had to be offset by business expenses. (MPP, § 44-113.212.)[4]

Appellant argues that she was unaware of the AFDC regulations governing cash-basis reporting and did not "wilfully" refuse to comply with them. Contrary to appellant's claim, there need not be a "wilful" refusal to comply with welfare rules and regulations before aid can be reduced. Nothing in *Jennings* v. *Jones* (1985) 165 Cal.App.3d 1083 [212 Cal.Rptr. 134] requires us to so hold. The record shows that in 1989 the County told appellant that she had to report business income and expenses on a monthly basis. Appellant and her husband complied with the cash reporting requirements for a year. In 1990, however, appellant changed her accounting system without notifying the County. Section 11004, subdivision (b), required that appellant report ". . . accurately and completely within his or her competence those facts required of him or her . . . and to report promptly any changes in those facts."[5]

Appellant now argues that section 11004 imposed a duty on the County to give "due consideration for the needs of applicants." According to appellant,

---

[4]MPP section 44-113.212 states in pertinent part that net business income is calculated "by offsetting the business expenses against the gross income from self-employment. [¶] (a) Personal expenses such as income tax payments, lunches, entertainment and transportation to and from work are not classified as business expenses and shall not be deducted from gross income in determining total profit earned from self-employment. . . . [¶] (b) Expenses which are directly related to the production of goods or services by a self-employed person, and without which the goods or services could not be produced, shall be allowed. The recipient must bear the full burden of proof for justifying the existence of and need for any expense allowed under this classification. [Citation.] The county is required to verify the amount of the expenses, and that the expenses were actually incurred. . . ."

[5]Section 11004 states in pertinent part: "The provisions of this code relative to public social services for which state grants-in-aid are made to the counties shall be administered fairly to the end that all persons who are eligible and apply for such public social services shall receive the assistance to which they are entitled promptly, with due consideration for the needs of applicants and the safeguarding of public funds. [¶] (a) Any applicant for, or recipient or payee of, such public social services shall be informed as to the provisions of eligibility and his or her responsibility for reporting facts material to a correct determination of eligibility and grant. [¶] (b) Any applicant for, or recipient or payee, of such public social services shall be responsible for reporting accurately and completely within his or her competence those facts required of him or her pursuant to subdivision (a) and to report promptly any changes in those facts."

the County owed her a duty to advise her how to structure her bookkeeping records. Appellant cites section 11320 et seq. for the proposition that the County should have provided her accounting classes before it reduced the AFDC grant. The argument lacks merit.

Section 11320 et seq. governs the Greater Avenues for Independence (GAIN) program, a work program to enable welfare recipients to become self-supporting. To participate in the program, the recipient must enter into a contract with the County specifying what services and job training will be provided. (§ 11321.4, subd. (a).)

Appellant concedes that she has never been a participant in the GAIN program but claims the County should have provided bookkeeping training when it granted her permission to start a business. (§ 11323.1, subd. (d)(1)(F).) We are aware of no state or federal authority holding that self-employed AFDC recipients must be provided GAIN services. Appellant was told that she could start a business if she complied with the state and federal reporting requirements. County had no duty to provide self-employment training a year later, after the business began to earn a profit.

Section 11004 imposed a duty on the County to administer the AFDC program fairly and safeguard public funds. The trial court found that "the forms and the regs don't make sense if you're on an accrual basis." We agree. A recipient using accrual accounting would have to report a $1,000 sale as income even though the customer never paid the bill. Although the County must consider the needs of the grant recipient, section 11004 does not give the recipient the concomitant right to report business income and expenses in a manner that is inconsistent with the state and federal AFDC regulations.

Appellant also claims that her equal protection rights were violated because the judgment "isolates" her from other AFDC recipients and denies her self-employment training. Appellant, however, was not and never has been a participant in the GAIN program. ■ "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner. [Citation.]" (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) ■ No showing has been made that appellant was treated unfairly or made part of a suspect class. The judgment provides that appellant must follow the same state and federal income reporting rules that are observed by other AFDC recipients.

■ Appellant nonetheless argues that the County was estopped from reducing the grant or seeking a refund for the overpayment. Appellant cites

*Lentz* v. *McMahon* (1989) 49 Cal.3d 393 [261 Cal.Rptr. 310, 777 P.2d 83] for the rule that a welfare agency may be equitably estopped if it ". . . negligently or intentionally caused a claimant to fail to comply with a *procedural* precondition to eligibility, and the failure to invoke estoppel would cause great hardship to the claimant." (*Id.*, at pp. 401-402.)

Before the doctrine of estoppel applies in a given case, four elements must be present: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

We reject the estoppel claim. Appellant's husband testified that he changed the accounting system without asking the County. Husband assumed that he could report income on an accrual basis and build up capital for the business. The County was not apprised of the facts until appellant submitted her monthly eligibility report on May 11, 1990. Based on the evidence presented, the trial court reasonably concluded that the County was not estopped from enforcing the applicable state and federal rules.

Appellant's citation of *Canfield* v. *Prod* (1977) 67 Cal.App.3d 722 [137 Cal.Rptr. 27] does not compel a different result. There, the grant recipient sought retroactive benefits after the County failed to advise her that she had to pay Social Security taxes and was entitled to a grant to pay the taxes. (*Id.*, at p. 731.) Canfield was ignorant of the facts and relied on the County. The court of appeal held that the County was estopped from invoking a one-year limitation period to deny the underpayment claim. (*Id.*, at pp. 730-732.)

"[I]n determining whether an estoppel may be raised against a public agency an important consideration is the degree of 'culpability or negligence of the public agency or its representatives in their conduct or advice' and 'the seriousness of the impact or effect of such conduct or advice on the claimant.' [Citation.]" (*Id.*, at p. 732.)

The instant case is distinguishable. Appellant had no vested right to receive training under the GAIN program or report business income on an accrual basis. Substantial evidence was presented that appellant knew how to report business income and expenses and did so for a year. The County did not mislead appellant or suggest that she change her accounting system. State and federal regulations required that all grant recipients, including those participating in the GAIN program, report business income on a cash basis. If appellant was granted a special exemption to set aside income for future business expenses, it would frustrate the requirement that the County

consider all resources currently available in the budget month. (45 C.F.R. § 233.20(a)(3)(ii)(D); MPP § 44-101.) Accrual accounting may not be invoked to carry forward or carry back reportable income.

■ Appellant finally argues that the trial court should have deferred to the previous trial court's rulings on the first writ petition. There, the trial court vacated the DSS decision and remanded for additional evidence and further findings.[6] In citing Code of Civil Procedure section 1094.5, subdivision (f), the trial court ruled that the judgment was "without prejudice to the parties' right to appeal from any decision of the Administrative Law Judge adopted by the Department of Social Services." Jurisdiction was restored to the DSS. (Code Civ. Proc., § 1094.5, subd. (f); Cal. Administrative Mandamus (Cont.Ed.Bar 2d ed. 1989) §§ 4.108-4.109, pp. 164-165.)

At the second administrative hearing, the ALJ received additional evidence, addressed the court's questions, and issued a new decision. The decision was adopted by DSS on June 16, 1992. Appellant thereafter filed a second petition for writ of mandate.

Appellant asserts that the remand order in the first writ proceeding was the law of the case. Not so. The court did not rule on the merits of the claim or order DSS to make a specific disposition. "A final judgment operates as an estoppel as to issues actually litigated and determined in the action. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 253 and see also § 193.) However, we know of no doctrine of prospective collateral estoppel in which a party is bound to appeal an *anticipated* legal ruling or be barred from appealing that ruling if and when it is actually made." (*Talmo* v. *Civil Service Com.* (1991) 231 Cal.App.3d 210, 224 [282 Cal.Rptr. 240].)

Appellant's remaining arguments are without merit. As discussed, state and federal law requires that DSS consider a grant recipient's business income and expenses for the budget month. (42 U.S.C. § 602(a)(7)(A); *Green* v. *Obledo* (1981) 29 Cal.3d 126, 132 [172 Cal.Rptr. 206, 624 P.2d 256].) Accrual accounting systems may not be used to defer income currently available to the grant recipient. Although appellant believes that a

---

[6]The judgment provides that "[t]he respondent's decision should take into account the issue of the effects of petitioner's accounting mistakes, *if any she made*. In this regard the court wishes the respondent to answer the following questions: [¶] "(a) Shouldn't it all be figured out either 'accrual' basis or 'cost' basis, and the items and expenses attributed to the proper month? [¶] (b) If the objective is to help people get off welfare, is holding a lay person working at a home business to the expertise of a bookkeeper/accountant reasonable? [¶] (c) The form that the petitioner used, whether 'cash basis' or 'accrual basis,' should be placed into evidence to enable the reviewing court, if any, to determine more adequately the nature of accounting system utilized." (Italics added.)

cash-basis reporting system creates a disincentive to become self-employed, it is an eligibility condition with which all AFDC recipients must comply. We agree that public welfare laws should be fairly construed to assist the needy applicant so he or she can become self-reliant. (§ 10000; *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 208-209 [172 Cal.Rptr. 206, 624 P.2d 256].) The stated purpose of the AFDC program is to provide financial assistance for dependent children. It was not created to assist a family in the operation of its business. Federal law requires that appellant pay back the excess benefits ($326) that were paid pending the administrative appeal. (42 U.S.C. § 602(a)(22); *Daniels* v. *McMahon*, *supra*, 4 Cal.App.4th 48, 52-53.)

The judgment is affirmed. The parties shall bear their own costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied June 23, 1994.